**DAVE LEHR, Inc., v. WACKERBARTH et ux.**

**No. 8576.**

Court of Civil Appeals of Texas. San Antonio.

May 6, 1931.

Eskridge & Groce, of San Antonio, for appellant.

McAskill & Williams, T. M. West, and Hardy & Hardy, all of San Antonio, for appellees.

COBBS, J.

Appellees sued appellant to recover damages sustained by reason of a collision between appellant's truck and appellees' automobile. Appellees alleged that appellant's Ford truck, driven by its agent and employee, negligently collided with the automobile operated by John Wackerbarth, in which Emily Wackerbarth was riding; and that, as a result of the collision, appellees' car was over-turned, and Emily Wackerbarth was seriously and permanently injured, to appellees' damage in the sum of $10,000. They prayed judgment for that sum, together with $550, expenses necessarily incurred by appellees as a result of said collision.

The court overruled all exceptions, and the case was tried to a jury on special issues. In response to the special issues, the jury found:

"That at the time of the collision the driver of the car was not the servant of the defendant, Dave Lehr;

"But was the servant of the defendant Dave Lehr, Inc.

"And was not the servant of the defendant, Henry Mitchell;

"That such driver negligently failed to sound his horn, such negligence directly caused or contributed to the collision;

"And that such driver was operating the car upon the left-hand side of the street, which was negligence and directly caused, or contributed to, the accident;

"That the driver of such truck was operating the car at a negligent rate of speed which also directly caused or contributed to the accident;

"That the plaintiff was not guilty of contributory negligence;

"And fixed the plaintiff's damage at the sum of Four Thousand Dollars ($4,000.00)."

Pursuant to such verdict on the 5th day of June, 1930, the court rendered judgment in favor of the plaintiff in the sum of $4,000, as against the defendant, Dave Lehr, Incorporated, but no disposition was made in such judgment of any of the issues as against the defendants Dave Lehr, individually, W. W. Lehr, Henry Mitchell, or Mario Flores.

Motion for new trial was in due time filed, and on the 5th day of July, 1930, was in all things overruled by the court. Supersedeas bond was filed on July 23.

The issues in this case are short and simple. The undisputed evidence shows the conflict of the cars and the damage done.

It seems that Dave Lehr was doing business as a contractor in San Antonio, and Mario Flores was driving a truck for Henry Mitchell, and on the day of the accident was driving a truck from Dave Lehr's yard; that he had an accident at the corner of Pecos and Commerce street at the time he was going back to the yard to return his tickets, and from the yard he was to drive to Henry Mitchell's home and leave the truck. He was paid for his services at the office of Dave Lehr, and paid by the day. He was employed by Henry Mitchell at the office of Dave Lehr. He was employed by Henry Mitchell, for whom he worked. He was not employed by Dave Lehr, and he never directed Flores in any of his work, and the latter did not know that there was such a company as Dave Lehr, Incorporated. He said he never worked for Lehr and never knew him, and knew that the truck he was operating belonged to Mitchell. There were small signs on some of the box cars indicating that the material in the cars belonged to Dave Lehr, on the right of way of the I. & G. N. Railroad, but no sign indicating that the truck belonged to Dave Lehr. Henry Mitchell paid Flores $2.50 per day in cash for his work. Henry Mitchell testified he had been employed by Dave Lehr as shipping clerk and bookkeeper, and that immediately after the accident discharged Mario Flores, the driver of the truck. At the time of the accident, Flores was driving the truck he had bought from W. W. Lehr several months before. Mr. Mitchell further testified that he was running an independent truck business and employed drivers to operate his trucks and would do hauling for various people, but most of the time would do independent hauling for Dave Lehr or Dave Lehr, Jr., but would himself pay the driver in cash; that Dave Lehr never paid these drivers, they were paid by Mitchell.

He further testified:

That Dave Lehr's money did not pay the driver for the work that he did on the day of the accident in question; that Mr. Lehr never pays them. That Mr. Mitchell was the one that paid them out of his own pocket, and that Mr. Lehr's company, in getting extra trucks, would use any one's truck that would apply for the job, and, if the driver of the truck owned such truck, then Mr. Lehr would pay him so much per load for the hauling, but, if Mr. Mitchell happened to be owner of the truck, then Mr. Lehr would pay to Mr. Mitchell so much per load for hauling.

That on the day of the accident there was "a bunch of trucks hauling from this same car there," and, when he heard of the accident, he went down to see the car and had it sent to a garage, and that Dave Lehr did not own this truck, but Henry Mitchell owned the truck, and was trying to make a living with it, and was being paid $.50 cents per load for hauling this material for Dave Lehr, and that he in turn paid the driver of the truck a regular salary of $12 per week, which was paid in cash out of Mr. Mitchell's pocket, and that Mr. Lehr did not have any authority or control whatsoever over this truck or the driver of it on the day the accident happened, nor did he own the truck.

That on the day in question Mr. Lehr did not have a representative seeing to the loading of the truck, nor did he have a representative seeing to the unloading of the truck, but that each driver was in charge of his own truck and controlled it absolutely.

Mr. Mitchell testified that on the day of the accident he owned two or three trucks, and it was one of his trucks that was involved in the accident; that Mr. Lehr did not own the truck, or have any control over it; that Flores was getting paid for driving the truck by Mr. Mitchell; that Lehr paid 50 cents per load for the hauling to Mitchell, and that Mitchell in turn paid Flores $12 a week; that there were other trucks on the job besides the one owned by Mitchell; that there were several other trucks on this particular job, and that those other trucks were being paid 50 cents per load, the same as was Mr. Mitchell; that for his work for Dave Lehr he was being paid $45 per week, but this $45 per week did not include the 50 cents per load that he was being paid for the hauling of this material; that he hauled for others besides Dave Lehr, and would haul for any one who would employ him, and usually hauled on a contract basis, sometimes by the hour and sometimes by the load; that Mr. Lehr owned three trucks, but they were all Chevrolet trucks.

The testimony showed that, while Mitchell was working for Lehr, he was doing an independent business for himself by hauling with his trucks for any one, as well as for Lehr, and Flores was under the control of Mitchell alone, who paid him in person.

A thorough review of the testimony of the witnesses in the case convinces us that the driver of the truck was working for Mitchell independently and not for Lehr. He was working for Mitchell, who owned the truck. He was receiving his orders from Mitchell, Mitchell was paying him his wages, and Flores was not even acquainted with Lehr. There is no valid material testimony found in this record to justify an inference to the contrary.

The court should have given the appellant a new trial upon the facts of this case. For the errors committed, the judgment is reversed, and the cause remanded for a new trial.